Today's cases will be called, as previously announced, and the times will be as allotted to counsel. The first case today is number 21-1395, Rubens-Morris v. Pamela J. Bondi. At this time, would counsel's petitioner please come to the podium and introduce herself on the record to begin? Good morning. My name is Melaniesha Putt, and I represent Mr. Rubens-Morris. May it please the Court, Mr. Rubens-Morris is a native of Haiti and father of two U.S. citizen children. In his petition for review of a final order of removal entered by the Board of Immigration Appeals, Mr. Morris has been in the United States since he was 11 years old, arriving in 2010, 15 years ago. We respectfully ask this Court to vacate the Board's decision and remand for further proceedings for three principal reasons. First, the I.J. and the B.I.A. gave significant weight to police reports that were not only uncorroborated, but were actively contradicted by live sworn testimony. Mr. Morris' wife, identified as the alleged victim, testified under oath that Mr. Morris never assaulted her. Yet, the I.J., immigration judge, discounted that testimony and instead gave greater weight to the double hearsay statements in the police reports, which Mr. Morris had no opportunity to rebut through cross-examination. This Court's precedent, in Arias-Minaya v. Holder from 2015, sets a clear standard. Before relying on a police report in a discretionary immigration decision, the I.J. must make explicit findings that the report is both reliable and its use fundamentally fair. That never happened in this case. The law is that it has to be, as I understand it, at least expressed as to reliability, but not as to fundamentally fair. That fundamentally fair can be based on the facts that there was an opportunity to contest. That happened, right? I mean, there was an opportunity to say whatever wanted to be said about the police report. That's true that the fundamentally fair prong seems to have been met by the opportunity to present additional evidence. So what do you say about reliability? So that seems, at least from our decision in Rosa, to be more of an expressed requirement? Yes. Do you think that happened here, didn't happen here? It did not happen here, Your Honor. In the decision of the I.J., there was barely any mention except to say that the I.J. was giving a lot of weight to the police report and disregarding the testimony of the witness. Was the failure to make that finding raised to the BIA? Yes. Do you have a page we could look at in the brief to the BIA that would show that that particular argument was raised? If you don't have it here, you can just submit a 28-J. I may not have explicitly raised it in the BIA appeal because at the time Rosa... So was it raised? Well, basically the due process overall was raised. That's a different question. Just a simple point. Was the failure to make the finding raised to the BIA? No, because Rosa hadn't been decided at that point. But independently, you did raise a due process claim. Yes. Did you separately raise a failure to corroborate so it just wasn't reliable independent of it being a due process violation? I'm not as familiar with my BIA brief as I probably should be. But I believe that it was raised in the sense that it's hearsay, double hearsay versus live testimony, which is inherently unreliable. I'm saying in the IJ's decision that potentially corroborated the hearsay evidence of the police reports. Because as I understand it, the first test is that it has to be substantially relied upon. You say, yes, it was. The second is it has to be sufficiently corroborated. If it is, then it still can be used even though it's just a police report. So with respect to sufficient corroboration, what was the argument below on that score? So the fact that nothing in the police report was corroborated except for some basic similarities on the events. The victim, alleged victim, testified that in fact she wasn't hit, that she hadn't been in fear of her life. Am I right under Rosa, that's an independent, under our case law, that's an independent ground for error even if there was an express finding? Yes. I would say so, yes. But here, Maurice himself testified he hit the woman with the drill, right? I believe he said he may have accidentally hit her. And she says he didn't hit me at all with the drill. Right. And so, and then the IJ says, well, I don't believe her because he even admits he hit her with the drill. So I'm going to take what she said in the police report because based on him having a motive to not say the truth, that he did it on purpose and her previously saying it was on purpose, they went with that. Is that what we mean by corroboration? I mean, that he went, the IJ went through the evidence and said there's a reason I'm going to rely on what's in the police report? In the police report itself, I think there was some problematic information just in terms of it being inconsistent. But that is one point where I can understand that the judge did make a specific mention of that. But did the BIA rely on that and conclude that that was sufficient corroboration? They didn't specifically say that. They just made a general statement that it was reliable. But they, I believe, I don't know exactly. Let me find the exact word. Reports are reliable, but didn't explain why. The sufficient corroboration standard comes from what case? Is that from ROSA? The sufficient corroboration, I believe, comes from a matter of Aragoin. No, no, no. From our court. From our court. Well, it states reliability. I didn't know. I mean, ROSA held, right? ROSA held that if you want to rely on a police report as an IJ, you can't just say here's a police report. That's great. You have to have something else that says that's why I'm relying on the police report. That's what I understood ROSA talking about Aragoin to be saying. Do you agree? Is that right? I do agree that in the ROSA decision, they talked a lot about Aragoin and the need for corroboration. And is that decided after the BIA's ruling or before? After.  Yeah. That was a 1995 case, a matter of Aragoin. No, no. Was our decision in ROSA decided before or after the BIA decision here? Before. After? Before. ROSA is several years after the BIA decision. ROSA was 2024. So when the BIA made its ruling in this case, it's not entirely clear they were applying the standard that now we would require them to apply. Is that right? That's right, yeah. The BIA decision in this case was before the ROSA decision in this circuit. So what's the significance of that in your view as to what we should do? So the significance is that it requires the immigration judge to make a specific decision on reliability. Right, and did the BIA tell us whether it did that or not? Not on the specific finding, because that's a different issue that I thought we established wasn't clearly raised to the BIA. Right. This is the issue about the second part of the ROSA test, which is not was there substantial reliance on it, but was there sufficient corroboration of it? Right. And the BIA said that reports were reliable and it was unsupported by the record. The officers were not available, the charges were dismissed, the ways in court statements directly contradicted the police narrative, and the court failed to consider the difference between the double, never mentions the fact that one was hearsay versus one being in court testimony. And I think that's significant to whether they really, whether the immigration judge really looked at the quality of the evidence that was being presented. Any further questions? Let me ask you, regarding the second police report, what are your issues about that other report? And that's the police report on the stalking? July 7, 2020. He hid behind some bushes. Are your concerns similar to that, or? Yes. Well, one is that the victim, the alleged victim, she did not say that she was in fear of that incident. Mr. Maurice explained that he had gone to get keys and he didn't understand the restraining order. He wasn't able to get in because he didn't have his key. And so that's, I believe, why he was behind the bushes. When the police came, a neighbor had called, seeing a black man in Manchester, New Hampshire, climbing through a window. And it wasn't the alleged victim that called. She wasn't in fear. Can I just make sure I understand the legal sort of framework here? The questions are, one, did the IJ make a finding that the police report was reliable, which our case, as Rosa may say, is required? You say, you've made that argument, but you also say that wasn't raised before the BIA. Point one. Point two, fundamentally fair, you agree that because there was a chance to contest, that argument doesn't work. Did they rely on the police report? Yes, they did. And then the final question is, was that corroborated? And I guess I'm still not sure why you think it wasn't corroborated. So I gave you a set of facts where I said, this would seem to me to be corroboration. Why is that not corroboration, that the IJ heard inconsistencies where even the respondent, that Ms. Maurice is agreeing he made some contact with the woman with the drill, and then chooses to disbelieve then the statement by the wife that she wasn't touched at all? Why is that not corroboration for the wife's original statement? Because all of her testimony does not corroborate, taken as a whole. It goes specifically against everything in the police report. Is your argument that there was no corroboration, or is your argument that we don't know whether the BIA made a determination about corroboration when he found it was reliable? I think the BIA did not make any determination about whether it was corroborated, and I think if they were to go back with the same record... And did you argue Argan to the board and make this corroboration point to the board? Because Argan existed. Whether Rosa existed or not, Argan existed. I believe I did, Your Honor. I can double check that. Let me ask you just one follow-up question. You keep referring to the police report as not reliable because the woman testified. It's totally contrary to that, but you have to put into context it's his statement, the woman's statement, and the police report. And he's saying, yes, something happened. It wasn't kind of that way. She's saying nothing happened, absolutely, and at least she ended up even in the hospital. And then you have the police report. So isn't the IJ weighing the evidence? That's what judges do. So, Your Honor, they were weighing the evidence, but they weren't looking at the quality of the evidence and making a determination. So it was, I think, more than just weighing the evidence. And when there's no conviction and a police report, and if the immigration judge is relying on it, I believe that the court here has required the judge to do more than just simply lay them next to each other, but to decide whether the police report itself is reliable. And such a thing was not done. Thank you. Thank you. Thank you, counsel. That concludes argument. I'm sorry. Thank you. At this time, would counsel for the respondent please introduce herself on the record if you can. Good morning, Your Honors, and may it please the court, Allison Freyer for the Attorney General. In this case, the court lacks jurisdiction over the majority of Mr. Maurice's claims because he is simply complaining about the weight which the agency gave some evidence over some other evidence. He wishes that the IJ and the board had credited his testimony and his victim's testimony instead of the police reports. And this court cannot re-weigh that evidence. To the extent that's what it is, you're right. But there are definitely some legal issues that they're raising or might be raising that Rosa says are legal issues. So the first one is, one, did the IJ need to, one, or the BIA make an express finding of reliability? The board did here. The board made an express finding of reliability. Well, that's an odd way to make an express finding because what it says is they were reliable because the other side didn't show they were biased or otherwise unreliable. That's an odd way to make an affirmative finding that they're reliable, which is just by the absence of other people doing things. That's a mark of petitioner's failure to raise that argument below. The IJ decided the case as it was presented to him. So Mr. Maurice argued that the police... So let me just make sure. Do you concede that if they raised the Rosa argument, one, express reliability under Rosa is required, meaning the IJ and the BIA need to make an affirmative statement that, yes, I have found this police report to be reliable? Yes. Had it been properly raised, Rosa requires that now. Okay. But your argument is they don't get to make that argument because they didn't raise Rosa to the board, which, of course, they couldn't because it was three years before Rosa. Correct, although they could have been Rosa, right? The alien in Rosa didn't have the benefit of Rosa either. So just to narrow it down, your only argument on that is waiver. Otherwise, you agree that's an error. I'm not saying that's not the winning argument, but that's your argument. Yeah, with the failure to exhaust, which, of course, is the statutory mandate. But also, petitioner never presented any reason that it was unreliable other than the fact that it's a police report. But that's what I'm trying to get at with Rosa. Is Rosa's, that's, if the record just is like, look, there's a police report, looks good to me, but if there's not an affirmative statement by the IJ slash BIA that it is, in fact, reliable, do you understand that to be an error as our case described it? I think yes. Rosa would require an explicit reliability determination had it been properly raised, which it was not here. And then what about sufficient corroboration? Here, there's definitely a lot of corroboration in the record. The testimony of Mr. Maurice precisely tracks the police reports for the December 10th, 2018, stalking incident where he climbed in the back window of an apartment where he knew he wasn't welcome, and for the July 7th, 2020 incident where he was arrested for domestic violence against the woman, not his wife. In both of those incidents in particular, he testified exactly the same thing that the police reports said. So that's definitely sufficient corroboration. Moreover, the July 2020 incident involved multiple officers because a canine unit was involved so that officers' reports corroborate each other. So just help me understand how we're supposed to think about it. Rosa's crystallized our explanation, which I take this from BIA precedent, about the need for it to be sufficient corroboration. You probably think Rosa went too far in saying that, but yeah. But that's our law. It's where we are now, yeah. The BIA doesn't use words like sufficient corroboration, doesn't talk in terms of corroboration. The IJ itself identifies some features of the testimony, but doesn't itself speak in terms of corroboration using those terminology. As I understand it, Rosa, we vacated and remanded for the BIA to go ahead and assess whether there was sufficient corroboration. I guess my question is why shouldn't we do that here just to make sure that the BIA was not operating on the misapprehension, that the existence of the unrebutted police report is enough to make it reliable, no matter the quality of the corroborating evidence? That's certainly an option, but I would say it's not really a good use of anyone's time where there's so much corroboration below and Petitioner has not raised any specific concerns specific to this police report. These multiple police reports to suggest that they are unreliable or that they are so uncorroborated that it was error to rely on them. She hasn't really raised a legal question, right? She's still... Has she raised, so Argan existed. Yes. So has she raised what seems to be a very precise claim? All you did, IJ slash BIA, is rely on this police report. There was no corroboration. Like that precise argument, that that was the error. Was that the argument that was made to the BIA? Not precisely. Petitioner did cite Argan in her brief to the board, but was not arguing that the IJ below had improperly relied on the police reports because they were uncorroborated given the testimony in favor of the police reports. So the Petitioner was mostly focused on the hearsay nature of the police reports and the unavailability of the officers for cross-examination, which this court has already held is not relevant. So in your view, she didn't press the idea that the problem was a lack of corroboration. You read it more that given the hearsay nature of it, even whatever corroborating evidence there was wouldn't make a difference. But what's the line between those two things? In a case in which we don't have a, I don't know, do we have a finding or do we not have a finding about whether they were corroborated? I think the agency was treating them as corroborated, though it never explicitly said so. In particular, the IJ found as a matter of fact that Mr. Maurice hit his wife in the face with a drill during an argument on purpose. That was a finding of fact that he made after weighing Mr. Maurice's testimony, his victim's testimony, and the police reports. Where's that? That's in the IJ's decision? Yes, sir. And so that finding of fact would be, that's on 91 of the record at the top. Given this inconsistency in the testimony, the court does give strong weight to the police report in this matter and finds that she was struck with the drill and was taken to the emergency room for treatment. You just added some words. That's the only part that I want to say. I don't think he said struck with the drill on purpose in the course of the... Oh, fair enough. And what I was a little curious about was what the testimony was by the various parties. I take it the petitioner's view here was that she was accidentally, did he use the word struck? He said hit. On page 184 to 185 of the record, he says, and I believe she was hit with the object accidentally. I didn't even know that she was hit. And then what did she testify? When she said she was not struck with anything, did she say hit? She said she tripped over something and fell down, and that's why she had to go to the emergency room. I see. So the IJ, what he or she did... The IJ was mayor. Basically had the police report, heard the petitioner's testimony, found it was consistent, but he was kind of changing the story and then did not find it credible. So that's a credibility weight of the evidence determination, correct? Absolutely. Do you understand that these findings, based along with the trial record, would comply with ROSA even today? Yes. Overall, I think they would. I think had the agency decisions come out after ROSA, they would have been clearer and more artful, but I think they certainly comply. To Judge Barron's point, the last line of the IJ's, of the BIA, excuse me, BIA's discussion is, we are satisfied that the immigration judge considered the incident and arrest reports in making the determination and did not violate due process. So all that's saying is, it was okay to rely on the police reports, but at least Argonne, as interpreted by ROSA, is that is not enough. You can't just rely... The bottom line is, you can't just rely on a police report. You must rely on a police report plus something else. And the problem is, right, that the BIA there does not say that it found any something else. I think it does later when they're weighing the evidence. They're mentioning that the... I think... So I guess... The IJ was... I mean, then it goes on. We are not persuaded that the immigration judge erred in giving greater weight to the version of events contained in the police documents as closer in time than to the discrepancy. So that's getting to my point of, you know, using the evidence. So... Maybe discrepancy is a key word for you. Absolutely, yes. Because that brings it closer to the weighing of the evidence that would be beyond this court's... So the real problem is that this is unstructured, right, in light of ROSA. I think, yes, the agency certainly got the right answer and the same answer they would were there to be a remand, but it is not exactly in the package ROSA would prefer. Moreover, the IJ was relying on things outside of the police report, including the... Mr. Maurice's lack of remorse for accidentally... That's all... parasitic on whether the police report's accurate. No, because he testified that he hit his wife in the face with a drill during an argument accidentally, and the IJ found that he didn't show any remorse for that accident that sent his wife to the hospital. So even if we believed his testimony, despite the adverse credibility... Was it clear the IJ thought the remorse was for the accident rather than for the striking? The IJ says on page 91, the court also notes that in his testimony, Mr. Maurice took no responsibility for his actions. So there he's just looking at Mr. Maurice's testimony. There's a certain ambiguity as to what his actions are in that sentence. Okay, thank you.  Thank you, counsel. That concludes argument in this case.